IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| Rolandette Glenn *et al*., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| Tyson Foods, Inc.; Jason Orsak; | § | CIVIL ACTION NO. |
| Erica Anthony; and Maria Cruz, | § | 9:20-CV-00184-RC-ZJH |
| | § | |
| | § | |
| *Defendants* | § | |
| | § | |

---

## PLAINTIFFS' MOTION TO REMAND

---

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. I

TABLE OF AUTHORITIES ........................................................... II

ISSUES REQUIRING RESOLUTION ................................................1

SUMMARY OF THE ARGUMENT ...................................................2

RELEVANT FACTS ....................................................................4

LEGAL STANDARD ...................................................................5

ARGUMENT ...........................................................................6

1.   Defendants have not carried their burden to establish federal officer jurisdiction. ....................................................................6

    a. Defendants were not "acting under" the direction of a federal officer when they failed to protect Plaintiffs from exposure to COVID-19. .........................8

    b. Defendants have failed to articulate a colorable federal defense. ..................14

2.   Removal based on federal question jurisdiction is improper. ...........................17

CONCLUSION AND PRAYER FOR RELIEF ..................................19

<u>TABLE OF AUTHORITIES</u>

## Cases

*Benson v. Russell's Cuthand Creek Ranch, Ltd.*, 183 F. Supp. 3d 795 (E.D. Tex. 2016)...... 14

*Breaux v. Gulf Stream Coach, Inc.*, 2009 WL 152109 (E.D. La. 2009).................................. 9

*Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256 (5th Cir.)......................................... 17

*Cormier v. Chet Morrison Contractors, LLC*, 85 F. Supp. 3d 880 (S.D. Tex. 2015) ............. 5

*Dahiya v. Talmidge Intern., Ltd.*, 371 F.3d 207  (5th Cir. 2004) ............................................ 6

*EFW, Inc. v. Smiths Aerospace, L.L.C.*, 4:07-CV-733-Y, 2008 WL 11349748 (N.D. Tex. Nov. 21, 2008) ......................................................................................................... 6, 11

*Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653 (E.D. Tex. 1999)............ 6, 17

*Jackson v. Am. Bureau of Shipping*, CV H-20-109, 2020 WL 1743541 (S.D. Tex. Apr. 8, 2020) ................................................................................................................... 13, 14

*Jamal v. Travelers Lloyds of Texas Ins. Co.*, 97 F. Supp. 2d 800 (S.D. Tex. 2000) ............. 17

*Kaye v. Sw. Airlines Co.*, CIV.A.3:05CV0450-D, 2005 WL 2074327 (N.D. Tex. Aug. 29, 2005) ....................................................................................................................... 6, 8

*Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149 (1908).................................................. 17

*Meaunrit v. The Pinnacle Foods Group, LLC*, C 09-4555 CW, 2010 WL 1838715 (N.D. Cal. May 5, 2010)................................................................................................................. 15

*Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986) ................................. 6

*Mesa v. California*, 489 U.S. 121 (1989) ................................................................................. 7

*METX, LLC v. Wal-Mart Stores Tex., LLC*, 62 F. Supp. 3d 569 (E.D. Tex. 2014)............... 15

*Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063 (5th Cir. 1981).............................................. 6

*Reed v. Fina Oil & Chemical Co.*, 995 F. Supp. 705 (E.D. Tex. 1998) ............................ 7, 11

*Rogers v. Tyson Foods, Inc.* 308 F.3d 785 (7th Cir. 2002) .................................... 16

*Russell v. Baxter Healthcare Corp.*, 2002 WL 975679 (E.D. La. May 10, 2002) .................. 8

*Takacs v. Am. Eurocopter, L.L.C.*, 656 F. Supp. 2d 640 (W.D. Tex. 2009) ......................... 7

*Taylor v. Anderson*, 234 U.S. 74 (1914) ................................................................. 17

*Vanouwerkerk v. Owens-Corning Fiberglass Corp.*, 1:99CV179 TH, 1999 WL 335960 (E.D. Tex. May 26, 1999) ........................................................................ 6, 11, 12, 13

*Watson v. Philip Morris, Inc.*, 551 U.S. 142 (2007) ................................................. 8

*Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998) .................. 9, 10, 11

*Zamalloa v. Thompson Landscape Services, Inc.*, 4:17-CV-00519-ALM-KPJ, 2018 WL 3032677 (E.D. Tex. May 3, 2018) report and recommendation adopted, 4:17-CV-00519-ALM-KPJ, 2018 WL 2928083 (E.D. Tex. June 12, 2018) ................................................ 14

**Statutes**

21 U.S.C. § 452 ........................................................................................ 15

21 U.S.C. § 456 ........................................................................................ 15

21 U.S.C. § 467(e) ................................................................................... 16

28 U.S.C. § 1331 ............................................................................... 1, 2, 17

28 U.S.C. § 1442(a)(1) ............................................................................. 1, 7

<u>**ISSUES REQUIRING RESOLUTION**</u>

This is a personal injury case that involves exclusively state law claims against the named defendants Tyson Foods, Inc.; Jason Orsak; Erica Anthony; and Maria Cruz. Plaintiffs filed suit after they were exposed to COVID-19 while working at Tyson's Center, Texas facility. This case was improperly removed based on federal officer removal (28 U.S.C. § 1442(a)(1)) and federal question jurisdiction (28 U.S.C. § 1331). Plaintiffs now move to remand because Defendants have not overcome their heavy burden to establish federal jurisdiction of this state law tort case. The issues before the Court are as follows:

1. Federal officer removal is only proper when the removing defendants prove they were acting under the direction of a federal officer and that there is a connection between the defendants' actions under that direction and the plaintiffs' claims. Even detailed instructions from a federal officer are not sufficient when, as here, those instructions have no connection to the plaintiffs' claims. Tyson Foods and the other named defendants were not acting under a federal officer's direction when they failed to properly protect Plaintiffs from contracting COVID-19 by requiring Plaintiffs to continue working at the Tyson meatpacking plant in Center, Texas without the proper precautions and protections. In light of the allegations in Plaintiffs' petition, the first issue for the Court to address on remand is: *Was removal of Plaintiffs' state law claims proper under 28 U.S.C. § 1442(a)(1), the federal officer removal statute, where Plaintiffs' claims have no connection to any federal officer direction?* Proposed answer: No.

2. Federal question jurisdiction only exists when a federal question is presented on the face of the plaintiffs' properly pleaded state court petition. Said differently, for this Court to exercise federal question jurisdiction, the resolution of Plaintiffs' claims as pleaded at the time of removal, must depend on a disputed and substantial question of federal law. In their petition,

Plaintiffs have brought exclusively state law tort claims for negligence, gross negligence, premises liability, and wrongful death arising from Defendants' failures that occurred both before and after Governor Abbott's April 2 stay-at-home order. Defendants' actions were completely independent of any federal direction and do not implicate any federal statute, regulation, or order. Accordingly, the second issue before the Court is: *Was removal proper under 28 U.S.C. § 1331 where Plaintiffs' claims are brought exclusively under Texas state law and there is no federal question on the face of Plaintiffs' state law petition?* Proposed answer: No.

### SUMMARY OF THE ARGUMENT

Plaintiffs sued Defendants after they were exposed to COVID-19 due to Defendants' actions. After Plaintiffs sued in Texas state court, Defendants removed the case. Plaintiffs now move to remand the case to the 273rd Judicial District Court of Shelby County, Texas for the following reasons.

First, Defendants have not overcome their heavy burden to establish federal officer jurisdiction. To show that the federal officer statute applies, Defendants must show (1) that they are persons under the statute; (2) that they acted under color of federal authority when committing the acts that allegedly caused Plaintiffs' injuries; and (3) that they have asserted a colorable federal defense. Defendants have not satisfied elements two and three.

Defendants cannot show that they acted under federal authority or direction when they failed to protect Plaintiffs from COVID-19. Plaintiffs allege in their petition that Defendants directly violated the Texas stay-at-home order, forced Plaintiffs to come to work despite the dangers of the pandemic, and failed to implement proper safety procedures and precautions to prevent the spread of the virus. These actions fall outside of any federal control or direction over

Defendants' production of meat. In the Fifth Circuit, Defendants have to show that a federal officer exercised detailed, direct control over the actions that caused Plaintiffs' injuries. Defendants allege that Plaintiffs' claims are foreclosed due to President Trump's Executive Order put in place on April 28, 2020 and issued under the Defense Production Act. But these arguments are meritless. Plaintiffs' allegations do not have a causal connection with the Order or the Act because (1) Plaintiffs injuries arose before the Order was put in place; and (2) Plaintiffs' claims arise out of Defendants' failures—namely the failures to comply with the Executive Order—to adequately protect Plaintiffs when the meatpacking plants remained open.

Second, Defendants have failed to assert a colorable federal defense. Defendants argue that the Poultry Products Inspection Act and President Trump's Order under the DPA preempt Plaintiffs' claims. But neither of these preemption arguments hold water. As to the PPIA, Plaintiffs' claims do not arise out of the statute, are not covered in the express preemption law, and are not provided for in the Act by a private right of action. Further, the Order and DPA also does not preempt Plaintiffs' claims for similar reasons; namely, Plaintiffs' causes of action do not arise out of Defendants compliance with or implementation of the Order or the Act.

Third, Defendants have not overcome their burden to prove federal question jurisdiction. The well-pleaded complaint rule states that for federal question jurisdiction to take hold, there must be a federal question on the face of Plaintiffs' well-pleaded complaint (or in this case, state court petition). There is not. Plus, there is no indication, and Plaintiffs have not alleged facts that say any different, that Plaintiffs' claims arise under federal law. Accordingly, removal is inappropriate under federal question jurisdiction as well.

## RELEVANT FACTS

Plaintiffs are eleven Tyson workers who contracted COVID-19 because of unsafe working conditions and the negligent acts of the individual Defendants at the Center, Texas Tyson facility and the personal representative of a twelfth worker, Beverly Whitsey, who died as a result of contracting the virus at work.

In the spring of 2020, the COVID-19 pandemic began sweeping the United States. Many states and counties began implementing proactive safety measures to prevent the spread of COVID-19. This included the State of Texas. Governor Abbott issued a stay-at-home order for the state that took effect on April 2, 2020. Despite the stay-at-home order, Plaintiffs were required to continue working at the Tyson meatpacking plant in Center, Texas—even prior to any Executive Orders.

Both before and after the April 2 stay-at-home order, Tyson failed to take adequate precautions to protect the workers at its meatpacking facilities, including the Center, Texas plant. Even when the rest of the country and the state of Texas were taking significant precautions to prevent the spread of COVID-19, Tyson failed to do the same. And even after the April 2 order, Tyson still required its employees to come to work—and more importantly did not provide adequate precautions and protections to help protect its employees from COVID-19.

Defendants Jason Orsak (the complex safety manager), Erica Anthony (safety coordinator), and Maria Cruz (safety coordinator) were directly responsible for implementing policies and procedures that would help prevent the spread of COVID-19 at Tyson's Center, Texas meatpacking plant. These Defendants were also directly responsible for implementing and enforcing adequate safety measures to prevent the spread of COVID-19 to the Tyson employees working at the Center, Texas meatpacking plant. These employees, along with Tyson Foods,

failed to fulfill their individual job duties to protect Plaintiffs from contracting COVID-19 at the Tyson plant. Defendants Orsak and Anthony failed to issue masks to employees, institute six feet barriers between employees, limit contact between employees, and create rideshare alternatives to the Plant's bus system. As a direct result of the negligence and gross negligence of Defendants, Plaintiffs contracted COVID-19 at the Center, Texas meatpacking plant. As a result, Plaintiffs have experienced significant injuries, and Ms. Whitsey died from the virus.

Thousands of Tyson employees were exposed to COVID-19 at Tyson's meatpacking facilities. At the time Plaintiffs filed suit, at least 7,100 Tyson employees had contracted COVID-19, and at least 24 Tyson employees had died as a result of exposure to COVID-19 at Tyson's meatpacking facilities throughout the country. That number has since increased significantly.

In Texas, Tyson chose not to provide its employees with workers compensation insurance. Instead, Tyson has implemented a program called WISP, or Workplace Injury Settlement Program, wherein Tyson pressures employees to sign releases before providing injury benefits. In many cases, Tyson then pays limited, if any, benefits once its employees have signed away their right to sue. These actions further establish Plaintiffs' state law claims.

Tyson's conduct, effectuated through both Tyson Foods and the other named Defendants, was negligent and grossly negligent and was the cause of Plaintiffs' injuries. These claims should be resolved in state court.

### LEGAL STANDARD

"The plaintiff in a removed action may challenge the assertion of federal jurisdiction through a motion to remand." *Cormier v. Chet Morrison Contractors, LLC*, 85 F. Supp. 3d 880, 882 (S.D. Tex. 2015). On a motion to remand, "the removing Defendants have the burden to

establish that federal jurisdiction exists." *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 658 (E.D. Tex. 1999). Given that burden, federal courts operate on the initial presumption against jurisdiction. *See Kaye v. Sw. Airlines Co.*, CIV.A.3:05CV0450-D, 2005 WL 2074327, at *1 (N.D. Tex. Aug. 29, 2005). "In assessing whether removal was appropriate, [federal courts are] guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed." *EFW, Inc. v. Smiths Aerospace, L.L.C.*, 4:07-CV-733-Y, 2008 WL 11349748, at *1 (N.D. Tex. Nov. 21, 2008). Thus, "if there are significant doubts about the propriety of removal, those doubts should be resolved *against* removal." *Faulk*, 48 F. Supp. 2d at 658 (emphasis as in original); *see also Vanouwerkerk v. Owens-Corning Fiberglass Corp.*, 1:99CV179 TH, 1999 WL 335960, at *3 (E.D. Tex. May 26, 1999) (same). In other words, if the court "lacks subject matter jurisdiction then it *must* remand [the] case to the state court from whence it came." *Id.* (emphasis as in original).

It should be noted that remand orders are not reviewable or appealable absent a certification "by the district court according to the provisions of 28 U.S.C. § 1292(b)." *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1064-65 (5th Cir. 1981); *see also Dahiya v. Talmidge Intern., Ltd.*, 371 F.3d 207, 209 (5th Cir. 2004).

<u>**ARGUMENT**</u>

**1.  Defendants have not carried their burden to establish federal officer jurisdiction.**

"Title 28 U.S.C. § 1442(a)(1) provides an exception to the general rule that an alleged defense to a state-law issue—even if it raises a federal question—is insufficient to confer subject matter jurisdiction necessary for proper removal." *Faulk*, 48 F. Supp. 2d at 659 (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986)). Section 1442(a)(1), the federal officer statute, provides in part that "[a] civil action . . . commenced in a state court . . . may be

removed" if the action involves "The United States or any agency thereof or any officer (or any person acting under that officer) . . . for any act under color of such office . . ." *Id.* (citing 28 U.S.C. § 1442(a)(1)).

In *Mesa v. California*, the United States Supreme Court established three prongs that Defendants must establish to prove jurisdiction under the federal officer statute. 489 U.S. 121 (1989). Here, Defendants must show that:

> 1. Defendants are "persons" acting under a federal officer;
>
> 2. Defendants were "acting at the direction of an officer of the United States and that a causal nexus exists between [Defendants'] actions under color of federal office and [Plaintiffs'] claims;" and
>
> 3. Defendants have a viable, colorable federal defense.

*Id.*; *see also Reed v. Fina Oil & Chemical Co.*, 995 F. Supp. 705 (E.D. Tex. 1998).

The policy behind federal officer removal is to protect individuals who are truly acting at the direction and on behalf of a federal officer "because it is premised on the protection of *federal* activity and an anachronistic mistrust of state courts' ability to protect and enforce *federal* interests and immunities from suit. . . ." *Takacs v. Am. Eurocopter, L.L.C.*, 656 F. Supp. 2d 640, 643-44 (W.D. Tex. 2009) (emphasis as in original) (internal citations and quotations omitted). Accordingly, "private actors seeking to benefit from [the federal officer statute] provisions bear a special burden of establishing the nature of their activities." *Id.*

Here, Plaintiffs do not dispute that Defendants fit the definition of "persons" under the statute. But Defendants have not—and cannot—establish elements two and three. Defendants were not acting under the direction of a federal officer when they caused Plaintiffs' injuries, nor have they asserted a colorable federal defense. Indeed, Defendants' arguments on removal are unsupported by the facts or the law and are nothing more than failed attempts to establish federal jurisdiction.

**a. Defendants were not "acting under" the direction of a federal officer when they failed to protect Plaintiffs from exposure to COVID-19.**

Defendants have not provided any evidence that Plaintiffs' injuries are causally related to any alleged directions from a federal officer.

In order to establish the second *Mesa* element, Defendants must show that they "acted pursuant to a federal officer's directions and that a causal nexus exists between the defendant['s] actions under color of federal office and the plaintiff's claims." *Sw. Airlines Co.*, 2005 WL 2074327, at *3. Defendants must show that a federal officer had "direct and detailed control" over them. *Id.* Explaining the "acting under" element of federal officer removal, the United States Supreme Court in *Watson v. Philip Morris, Inc.*, 551 U.S. 142 (2007) "found . . . that the private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior. . . ." 551 U.S. 142, 152 (2007) (emphasis as in original). But "the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law." *Id.* (emphasis as in original). Thus, even a "highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Id.* at 153. "And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.*

The key analysis from *Watson* hinges on whether the defendants were operating under "detailed direction at the behest of a federal officer" such that the federal government's involvement with the defendants was "so invasive that [Defendants] can be characterized as essentially [in] the position of an employee of the government." *Russell v. Baxter Healthcare Corp.*, 2002 WL 975679, at *8 (E.D. La. May 10, 2002) (internal quotations omitted). Importantly, "[c]ourts frequently look at the 'federal direction' and 'causal nexus' prongs of the *Mesa* test together as they are so closely related. . . ." *Breaux v. Gulf Stream Coach, Inc.*, 2009

WL 152109, at *2 (E.D. La. 2009) (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998)).

Here, Defendants must show that Plaintiffs' allegations and injuries are causally linked to Defendants' actions under the direction of a federal officer. But Defendants cannot do so.

In their removal papers, Defendants argue that President Trump's April 28, 2020, Executive Order "Delegating Authority Under the DPA with Respect to Food Supply Chain Resources During the National Emergency Outbreak of COVID-19" issued under the Defense Production Act establishes federal officer direction. But this argument is incorrect for at least two reasons.

First, Plaintiffs' claims arose before President Trump issues his April 28 order. In their petition, Plaintiffs allege that Defendants unnecessarily and recklessly exposed Plaintiffs to COVID-19 weeks before the April 28 order. Specifically, Plaintiffs state that Defendants "failed to take adequate precautions to protect the workers at its meatpacking facilities, including the Center, Texas meatpacking facility" by failing to take "significant precautions to prevent the spread of COVID-19, prior to April 2, 2020." Ex. 1: Pls.' First Am. Pet., at ¶ 25. Thus, Plaintiffs' claims did not arise under the President's Executive Order and therefore the Order is wholly irrelevant to the suit and cannot establish federal officer control.

And second, even those portions of Plaintiffs' claims that arise after the April 28 Executive Order, Defendants' conduct, as alleged by Plaintiffs, runs directly contrary to the plain language of the Order that meatpacking facilities must "continue operations consistent with the guidance from the CDC and OSHA."

Either way, the Order, or any direction from a federal officer, is not evidence that establishes federal officer direction of Defendants' actions that led to Plaintiffs' injuries.

In their removal papers, Defendants cite *Winters v. Diamond Shamrock Chem. Co.* to support their control arguments. But a closer look at *Winters* reveals that it cuts against Defendants' arguments. In *Winters*, the defendants were tasked by the federal government to supply the military with Agent Orange between 1962 and 1971. *Winters*, 149 F.3d at 390. Margaret Winters worked as a civilian nurse from the United States Agency for International Development in Vietnam in 1966 and 1967. *Id.* During her 14 months overseas, Winters lived in Saigon and worked at a hospital located in Cholon. *Id.* While she was living there, the American government employed Agent Orange as a defoliator to give the military a tactical advantage. *Id.*

Ten years later, Winters began experiencing severe health problems and was diagnosed with non-Hodgkin's lymphoma. *Id.* She filed suit ten years later after discovering the link between her illness and the government's use of Agent Orange. *Id.* She alleged that the chemical was defective and unreasonably dangerous and that it caused her terminal cancer. *Id.*

After removal, Winters' estate (Winters had passed away during the litigation) filed for remand arguing that the defendants could not establish federal officer jurisdiction. *Id.* at 398. Discussing the second element, the court looked at whether "the government specified the composition of Agent Orange so as to supply the causal nexus between the federal officer's direction and the plaintiff's claims." *Id.* "The district court determined that the Defense Department had contracted with the chemical companies for a specific mixture of herbicides, which eventually became known as Agent Orange." *Id.* The defendants were compelled under threat of criminal sanctions to produce the chemical as requested by the government. *Id.* In short, "the Defense Department expressly issued detailed and direct orders to the defendants to supply a certain product." *Id.* The specificity of the order raised "the issue to a federal concern subject to removal under section 1442(a)(1)." *Id.* (internal quotations omitted). In other words, and for

10

purposes of this case, federal officer jurisdiction requires—as it did in *Winter*—"strict control" over the private entity's (Tyson's) production of a particular product or of a particular activity. *Id.* In *Winters* it took "the government's detailed specifications concerning the make-up, packaging, and delivery of Agent Orange, the compulsion to provide the product to the government's specifications, and the on-going supervision the government exercised over the formulation, packaging, and delivery of Agent Orange . . . to demonstrate that the defendants acted pursuant to federal direction and that a direct causal nexus exist[ed] between the defendants' actions taken under color of federal office and [the plaintiff's] claims." *Id.* at 400.

Defendants in this case cannot come close to showing the level of control required by the *Winters* court to establish a causal nexus between Plaintiffs' claims and Defendants' actions. *See Smith Aerospace*, 2008 WL 11349748, at *3 ("[Defendant] must show that a federal officer had ***direct*** and ***detailed*** control over [its] actions.") (emphasis added); *Sw. Airlines Co.*, 2005 WL 2074327, at *4 (citing *Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705, 710-12 (E.D. Tex. 1998) where second element of *Mesa* test was satisfied because "defendant produced evidence that 'almost every aspect of the actual operation of the plant was supervised or dictated by the federal government.'"). In fact, courts in the Eastern District have distinguished *Winters* in contrast with cases more like this one.

For example, in *Vanouwerkerk*, multiple plaintiffs sued after their loved ones were exposed to asbestos at various steel and chemical facilities owned or operated by the defendants, suffered terminal illnesses, and lost their lives. 1999 WL 335960, at *1. The plaintiffs brought state law negligence and gross negligence claims for the defendants' failure to warn the decedents about the dangers of asbestos. *Id.* The defendants removed the case arguing that their actions (exposing the plaintiffs to asbestos during the production of the federally controlled

products) fell under the direction of a federal officer and that the case belonged in federal court. *Id.*

But like here, in *Vanouwerkerk* the defendants could not argue that the specific product that was federally controlled caused the plaintiffs' injuries. The steel and chemical defendants in *Vanouwerkerk* tried to analogize their case to *Winters* and two other Eastern District cases where direct, narrow, focused government control of the production of a product that injured a plaintiff established federal officer jurisdiction. In doing so, the defendants argued that the "nexus requirement" was clearly met because "the 'product' allegedly causing the injuries" was "'the very facilities at which plaintiffs claim to have worked.'" *Id.* at *6. But, the court explained, "the 'product' in *Winters* was not the Saigon hospital where plaintiff worked during her alleged exposure to Agent Orange." *Id.* Indeed, like here, "[a] proper analogy would not permit the federal officer statute to shroud an entire facility from state-law claims simply because a federal officer dictates the specifications of the product manufactured there." *Id.* "Rather, a proper analogy would tether the defendants' actions under the color of federal office to the plaintiffs' claims, thereby establishing the causal nexus necessary to support the second prong of the *Mesa* test." *Id.*

Here, Defendants have not—because they cannot—provided any evidence of a causal link between the Executive Order or any instruction or direction from a federal officer and Plaintiffs' injuries. Plaintiffs worked at Tyson Foods' meatpacking plant, were forced to work during the pandemic despite Governor Abbott's stay-at-home order and were not given the proper PPE to prevent the spread of COVID-19. Not only were Plaintiffs subjected to Defendants' failures before the Executive Order was issued, but Plaintiffs were also injured because Defendants failed to comply with the Order and other state law standards. Nothing in the

federal government's orders to continue plant operations during the pandemic prevented Defendants "from taking their own safety precautions heeding state-law standards above the minimum standards" outlined in the Order or the government's directions. *Id.* The lack of control over the safety at the plant is fatal to Defendants' removal arguments in this tort and premises liability case. *See id.* at *4 ("This is a premises liability case—not a product case; and Defendants' attempt to transmogrify their entire facilities (i.e. their premises) into 'products' misapplies precedent and fails the second prong of the *Mesa* test.").

In short, Defendants can quote the Order or other direction from the government mandating that Tyson keep its meatpacking plants open during the pandemic, but these orders do not establish federal officer control over Defendants' management of the plant. A recent case in the Southern District was remanded to state court based on similar arguments. In *Jackson v. Am. Bureau of Shipping*, CV H-20-109, 2020 WL 1743541 (S.D. Tex. Apr. 8, 2020), the plaintiffs brought claims against the American Bureau of Shipping, a classification society that inspects ships for seaworthiness and safety issues. The plaintiffs alleged that ABS failed to properly inspect a Bouchard-owned barge that exploded just off the coast of Corpus Christi, Texas killing some of the crew and severely injuring several others. The plaintiffs brought claims in state court against ABS. ABS removed the case arguing that its inspections were performed at the behest and under the direction of the United States Coast Guard. ABS insisted that the Coast Guard's delegation of broad inspection and certification authority granted ABS federal officer protection. But the court explained that even a highly regulated entity like ABS could not "claim federal officer jurisdiction for all acts merely because [the government] impose[d] strict standards on ABS before allowing it to perform inspections." *Id.* at *1. The court remanded the case because

ABS offered no specific evidence showing that the actions that led to the injuries were performed "pursuant to a federal officer's directions. . . ." *Id.* at *2.

The same can be said of Defendants' actions that are the subject of this suit. Here again, Defendants cannot show a causal link between the failures that led to Plaintiffs' exposure to COVID-19 and a specific federal officer's direction. On the contrary, Defendants failed to follow CDC guidelines, OSHA regulations, and state and industry standards, and as a result, unnecessarily and recklessly exposed Plaintiffs to COVID-19. Simply because "numerous statutes and regulations" control the means and manner by which Defendants produce meat products, Defendants cannot claim that this action falls under federal officer jurisdiction. *Id.*; *see also Benson v. Russell's Cuthand Creek Ranch, Ltd.*, 183 F. Supp. 3d 795, 805 (E.D. Tex. 2016) (explaining that the "takeaway from these types of cases is that notwithstanding detailed government specifications given to a government contractor for a product or action, the contractor cannot avoid liability where there is an action independent from the government's requirements or control that would eliminate liability.").

### b.  Defendants have failed to articulate a colorable federal defense.

Remand is also appropriate because Defendants cannot put forth a colorable federal defense.

Defendants argue that both the Poultry Products Inspection Act ("PPIA") and President Trump's Executive Order and the DPA are colorable federal defenses for purposes of federal officer removal. These arguments are wrong for the following reasons.

First, Plaintiffs' claims do not arise out of the PPIA. "Federal preemption is a question of law reserved for the court." *Zamalloa v. Thompson Landscape Services, Inc.*, 4:17-CV-00519-ALM-KPJ, 2018 WL 3032677, at *3 (E.D. Tex. May 3, 2018) report and recommendation adopted, 4:17-CV-00519-ALM-KPJ, 2018 WL 2928083 (E.D. Tex. June 12, 2018). Preemption

can be express or implied. *METX, LLC v. Wal-Mart Stores Tex., LLC*, 62 F. Supp. 3d 569, 575 (E.D. Tex. 2014). "State law is expressly preempted when Congress uses clear preemptive language in the federal statute or regulation." *Id.* "Absent express preemptive language, a federal statute or regulation impliedly preempts state law when the language indicates a Congressional intent to exclusively and completely occupy a legislative field." *Id.*

Tyson argues that the preemption clause in the PPIA expressly preempts Plaintiffs' state law personal injury claims. This argument is incorrect based on a plain reading of the PPIA.

Congress explained that the purpose of the PPIA is "to provide for the inspection of poultry and poultry products and otherwise regulate the processing and distribution of such articles . . . to prevent the movement or sale in interstate or foreign commerce of, or the burdening of such commerce by, poultry products which are adulterated or misbranded." 21 U.S.C. § 452; *see also Meaunrit v. The Pinnacle Food Groups, LLC*, C 09-4555 CW, 2010 WL 1838715, at *5 (N.D. Cal. May 5, 2010) (noting that "Congress enacted the FMIA and the PPIA in part to prevent the interstate transfer of adulterated and misbranded meat and poultry products."). The Act provides for sanitary practices in the poultry packing facilities "for the purpose of preventing the entry or flow or movement in commerce or burdensome effect upon commerce, of poultry products which are adulterated." 21 U.S.C. § 456. The PPIA contains an express preemption clause that preempts state law that is contrary to the purposes of the PPIA: to "provide for the inspection of poultry and poultry products and otherwise regulate the processing and distribution" of poultry. 21 U.S.C. § 452. The preemption clause states in relevant part that:

> Requirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State or Territory or the District of Columbia . . . **Marking, labeling, packaging, or ingredient requirements (or storage or handling requirements** . . .) in

15

addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any official establishment in accordance with the requirements under this chapter, but any State or Territory or the District of Columbia may, consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment, or, in the case of imported articles which are not at such an establishment, after their entry into the United States.

21 U.S.C. § 467(e) (emphasis added).

The clause preempts any state law that seeks to impose "marking, labeling, packaging, or ingredient requirements" different, or in addition to "those made under" the PPIA. Plaintiffs' claims involve none of these issues.

Moreover, there is no private right of action under the PPIA. *See Rogers v. Tyson Foods, Inc.* 308 F.3d 785 (7th Cir. 2002). In *Rogers*, the court found that complete preemption "can only exist where, *inter alia*, the federal statute provides a private right of action." *Id.* at 790. In other words, even if Plaintiffs' claims fell under the PPIA preemption clause—which they clearly do not—preemption would still be improper because the PPIA does not contain a private right of action for claims like those Plaintiffs bring here.

And second, neither the Defense Production Act nor President Trump's April 28 Executive Order preempt Plaintiffs' claims. As outlined above, President Trump issued his order under the DPA weeks after Plaintiffs were exposed to and contracted COVID-19. Defendants cannot simply assert a colorable federal defense based on the Executive Order or the DPA because both are wholly irrelevant to Plaintiffs' claims, and their claims simply do not arise out of any executive or federal instructions or direction.

16

In short, for this additional reason the Court should grant Plaintiffs' motion to remand. Defendants have not raised a valid, colorable defense; therefore, this case should be remanded to state court.

### 2. Removal based on federal question jurisdiction is improper.

"Whether or not removal [is] proper is determined 'on the basis of claims in the state court complaint as it exists at the time of removal . . .'" *Faulk*, 48 F. Supp. 2d at 657 (quoting *Cavallini v. State Farm Mutual Auto Ins.*, 44 F.3d 256, 264 (5th Cir.)). To put it simply, "[w]hether a case is one arising under the Constitution or a law or treaty of the United States . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim. . . ." *Id.* (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)).

Federal question jurisdiction typically only exists if the plaintiff's suit "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The "well-pleaded complaint" rule provides that a suit raises a federal question "only when the plaintiff's statement of his own cause of action shows that it is based" on federal law. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152-53 (1908). Without that basis, "a movant may not remove a case to federal court." *Jamal v. Travelers Lloyds of Texas Ins. Co.*, 97 F. Supp. 2d 800, 802 (S.D. Tex. 2000) (internal citations and quotations omitted). "Courts will, however, typically look beyond the face of the complaint to determine whether removal is proper." *Id.* But "[f]ederal question jurisdiction under section 1331 extends to cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Id.* at 803. Importantly, "[t]his Court cannot invoke federal common-law jurisdiction solely because a lawsuit involves uniquely federal interests." *Smiths Aerospace*,

2008 WL 11349748, at *2. "Displacement of state law is warranted only if, in addition to involvement of uniquely federal interests, (1) a significant conflict exists between an identifiable federal policy or interest and the operation of state law or (2) the application of state law would frustrate specific objectives of federal legislation." *Id.*

Plaintiffs' claims here are based entirely on state law. Specifically, Plaintiffs bring claims against Defendants for negligence and gross negligence, premises liability, and wrongful death. The arguments Defendants make in their removal papers as to federal question are similar to their federal officer jurisdiction allegations. Defendants argue that Plaintiffs claims are directly related to federal directives and orders under the DPA. But as noted above, and reiterated below, these arguments are meritless in light of the facts set forth in Plaintiffs' petition.

Plaintiffs worked at the Tyson meatpacking plant in Center, Texas. The COVID-19 pandemic hit the United States early this spring and quickly spread throughout the country. In Texas, Governor Abbott issued a stay-at-home order that took effect on April 2. Despite the order, Plaintiffs were required to continue working at the Tyson meatpacking plant (without adequate precautions) after April 2. Prior to and following the stay-at-home order, Tyson failed to take adequate precautions to protect Plaintiffs at the facility. Before April 2, when the rest of the country was taking significant precautions, Tyson failed to take implement proper safety policies and procedures. And after April 2—when the stay-at-home order took effect—Tyson still required its employees to come to work. While at work, Plaintiffs were not given the proper equipment to counteract the highly contagious nature of COVID-19. And Defendants failed to issue masks, institute barriers, require and make possible social distancing, and create rideshare alternatives to the Plant's bus system.

Due to Defendants' failures, thousands of Tyson employees have been exposed to COVID-19 at Tysons' facilities. Defendants' conduct as it pertains to this suit and effectuated through both Tyson Foods and the named Defendants was the cause of Plaintiffs' injuries.

In addition to the facts noted above, Plaintiffs specifically alleged that this case falls under state court jurisdiction because "Plaintiffs bring their claims under Texas state law and do not seek to make any claims that are pre-empted by federal law." Ex. 1: Pls.' First Am. Pet., at ¶ 4. "Put differently, Plaintiffs allege that Defendants failed to provide them with a safe place to work and failed to follow appropriate guidelines and recommendations to avoid the spread of COVID-19." Id. In short, Plaintiffs' claims do not turn on interpretation of federal law, do not implicate federal regulations that govern the meat industry, and do not arise out of a federal cause of action. Absent any federal question on the face of Plaintiffs' state petition, and any indication in the slightest that Plaintiffs' claims fall under federal law, remand is appropriate. Thus, this Court should remand Plaintiffs' case as Defendants have—like they did under federal officer jurisdiction—failed to carry their burden to establish federal question jurisdiction.

## CONCLUSION AND PRAYER FOR RELIEF

Defendants have not carried their burden to establish federal jurisdiction under any of their theories on removal. First, Defendants have failed to show federal officer jurisdiction because Defendants have not put forth any evidence that it was operating under the direction of a federal officer or that the actions of which Plaintiffs complain in their petition have a causal nexus to a federal officer's control. Thus, removal under the federal officer statute was incorrect. And second, Defendants have further failed to establish federal jurisdiction under the federal question doctrine. Plaintiffs' well-pleaded state petition raises exclusively state law tort claims. Accordingly, there is no federal question on the face of Plaintiffs' petition, nor is there any

indication that Plaintiffs' claims arise out of federal law. As a result, the Court should remand this case to the 273rd Judicial District Court in Shelby County, Texas.

Respectfully Submitted,

ARNOLD & ITKIN LLP

/s/ Kurt Arnold
Kurt Arnold
State Bar No: 24036150
Federal ID: 36185
karnold@arnolditkin.com
Caj Boatright
State Bar No: 24036237
Federal ID: 650384
cboatright@arnolditkin.com
Roland Christensen
State Bar No: 24101222
Federal ID: 2987857
rchristensen@arnolditkin.com
Joseph McGowin
State Bar No: 24117268
Federal ID: 3465102
jmcgowin@arnolditkin.com
Claire Traver
State Bar No: 24115871
ctraver@arnoldiktin.com
6009 Memorial Drive
Houston, TX  77007
Tel: 713.222.3800
Fax: 713.222.3850
e-service@arnolditkin.com

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for Plaintiffs has conferred with counsel for Defendants and cannot come to an agreement on the issues presented in this motion.

*/s/ Roland Christensen*

_____

Roland Christensen

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system, which will send notification of electronic filing to all counsel of record on September 25, 2020.

*/s/ Roland Christensen*

_____

Roland Christensen