IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| Rolandette Glenn *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | |
| Tyson Foods, Inc.; Jason Orsak; Erica Anthony; and Maria Cruz, | § § § § | CIVIL ACTION NO. 9:20-CV-00184-RC-ZJH |
| *Defendants* | § § § | |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION TO REMAND**

### INTRODUCTION

In their resistance to Plaintiffs' motion to remand, Defendants have done nothing to establish federal jurisdiction of this state law personal injury case. Indeed, Defendants have wholly failed to cure any of the flaws in the removal papers and thus cannot establish federal officer or federal question jurisdiction. Specifically, this case should be remanded for the reasons presented in Plaintiffs' motion and for the following additional reasons in response to Defendants' opposition arguments:

First, although Defendants cite emails, policy documents, and a declaration from Barbara Masters none of this evidence establishes federal control over the actions that caused Plaintiffs' injuries. It is worth noting that Defendants did not choose to provide any of this evidence in their notice of removal, even though it was readily available. Regardless, Defendants' arguments fail on the merits because Defendants cannot establish the requisite federal control. Importantly,

1

Defendants do not even take the time to address *Jackson v. Am. Bureau of Shipping*—the most recent federal officer case in Texas federal court. Like ABS in *Jackson*, Defendants here cannot establish a causal connection between any federal direction and the failures that caused Plaintiffs' injuries.

Second, Plaintiffs did not—as Defendants allege—sue for damages due to the Tyson Carthage facility's status as critical infrastructure. Plaintiffs sued Defendants for failing to take adequate precautions to protect the workers at the Carthage plant. Even when the rest of the country and the state of Texas were taking significant precautions to prevent the spread of COVID-19, Defendants failed to do the same. Defendants were directly responsible for implementing policies and procedures that would help prevent the spread of the virus, but failed to do so. In short, Defendants' critical infrastructure arguments are irrelevant to Plaintiffs' state law tort claims.

And indeed, critical infrastructure or not, Defendants have not shown that they were ordered by the Federal Government to refrain from implementing basic safety policies and procedures while forcing Plaintiffs to continue working. Put differently, Defendants cannot be acting under the direction of a federal officer for purposes of removal when the conduct that forms the basis of the suit is conduct *disobeying* general instructions from the federal government.

Third, Defendants still cannot show that the PPIA or FMIA—or any statutory scheme for that matter—preempts Plaintiffs' state law tort claims. In fact, Defendants essentially ignore the dozens of state personal injury cases against Tyson Foods that did not implicate statutory preemption and have not cited a single case against Tyson Foods where a state personal injury claim was preempted by federal law. Defendants' preemption arguments are made solely for the

2

purpose of establishing federal jurisdiction. To be sure, preemption under the FMIA or PPIA is not a colorable defense.

The same can be said for preemption under the April 28 Executive Order and the Defense Production Act. Neither of which touch on Plaintiffs' claims here. Whether or not preemption is possible under these two legal theories is irrelevant to Plaintiffs' claims as there is no connection between federal direction and the April 28 Order or the DPA.

And finally, having failed to establish federal officer jurisdiction, Defendants certainly cannot establish federal question jurisdiction. Plaintiffs' state court petition pleads only state law claims that do not depend on a disputed or substantive question of federal law.

## ARGUMENT

**1. Defendants have not met their burden to show federal officer control.**

In their response to Plaintiffs' motion to remand, Defendants incorrectly try to relax the standard needed to establish federal officer control. Likely because Defendants cannot show that any federal directive led to the failures that caused Plaintiffs' injuries.

Specifically, Defendants argue that remand is precluded by *Latiolais v. Huntington Ingalls, Inc.*, a recent en banc Fifth Circuit case. 951 F.3d 286 (5th Cir. 2020). But *Latiolais* does nothing to change the analysis here, and in fact, *Latiolais* is easily distinguishable. Indeed, the Fifth Circuit's decision to do away with the "causal nexus" component of federal officer removal in favor of a "connection" test does not change the outcome here. Instead, *Latiolais* simply confirms that remand is appropriate where Defendants cannot show that they were acting under the direction of a federal officer when they failed to implement basic safety measures that would have prevented Plaintiffs from contracting COVID-19. Thus, even in light of *Latiolais*, Defendants cannot support their removal arguments no matter how hard they try to link the government's instructions to continue operations at the plant with the failures that led to

Plaintiffs' injuries. Again, Plaintiffs claims arise not because the plant was open, but because the plant was open *without adequate precautions*. Put differently, Plaintiffs' claims arise from Defendants' negligent acts—not the federal directive to maintain operations.

A short look at *Latiolais* is appropriate. There, an en banc Fifth Circuit panel sought to "strip away any confusion" that may have crept into federal officer jurisprudence in the Fifth Circuit courts from the 2011 amendment to the federal officer removal statute. *Id.* at 289. The case involved a machinist working aboard the Navy's USS *Tappahannock* while the vessel was being refurbished by Avondale. *Id.* During the 1960s and 1970s, Avondale contracted with the Navy to build and refurbish Navy vessels. Importantly, "the contracts obligated Avondale 'to comply with government plans and specifications, and the federal government had the right to and did exercise supervision over the process to ensure such compliance.'" *Id.* The plaintiff contracted mesothelioma after being exposed to asbestos due to Avondale's refurbishing work. *Id.*

On the plaintiff's motion to remand, the district court—following previous decisions—granted the motion because the defendants could not show control by the federal government over Avondale's safety practices specific to Avondale's use of asbestos. In short, remand was proper because the government's lack of control over those policies prevented a finding of a causal nexus between Avondale's federally controlled activities and the plaintiff's injuries.

But the Fifth Circuit reversed after a lengthy statutory analysis where the Court determined that the "causal nexus" requirement was unsupported by the statute and that instead it required only a connection between the cause of action and acts performed under the color of federal office. *Id.* at 296. That connection existed in *Latiolais* where the plaintiff alleged that "Avondale failed to warn him of the dangers of asbestos and failed to take measures to prevent

exposure." *Id.* The negligent acts were "connected with the installation of asbestos during the refurbishment of the USS *Tappahannock*" while "Avondale performed the refurbishment" including the "installation of asbestos pursuant to directions of the U.S. Navy." *Id.*

Unlike the defendant in *Latiolais*, Defendants in this case cannot establish that same connection here. Defendants would have this Court believe that any connection between the federal mandate to continue operations at the plant and Defendants' failures to properly protect their employees establishes federal officer jurisdiction. This argument grossly overextends the holding in *Latiolais*, which still requires a connection or association with acts "pursuant to a federal officer's direction"—something Defendants cannot establish here. *Id*

Equally fatal to Defendants' arguments is their failure to address the most recent Texas federal court federal officer case that is particularly instructive here. In Plaintiffs' motion to remand, Plaintiffs analogized this case with *Jackson v. Am. Bureau of Shipping*. CV H-20-109, 2020 WL 1743541 (S.D. Tex. Apr. 8, 2020). In *Jackson*, the plaintiffs brought claims against the American Bureau of Shipping, a classification society that inspects ships for seaworthiness and safety issues. The plaintiffs alleged that ABS failed to properly inspect a Bouchard-owned barge that exploded just off the coast of Corpus Christi, Texas killing some of the crew and severely injuring several others. The plaintiffs brought maritime claims in state court against ABS. ABS removed the case arguing that its inspections were performed at the behest and under the direction of the United States Coast Guard. ABS insisted that the Coast Guard's delegation of broad inspection and certification authority granted ABS federal officer protection.

In its removal documents, ABS produced a memorandum of understanding between it and the Coast Guard and cited several statutes giving ABS authority from the federal government to conduct inspections. ABS claimed that these documents showed that the USCG had direct

5

control over its services. But the court explained that even a highly regulated entity like ABS could not "claim federal officer jurisdiction for all acts merely because [the government] impose[d] strict standards on ABS before allowing it to perform inspections." *Id.* at *1. ABS's involvement with the Coast Guard—even to the point of being subject to federal regulations that controlled the means and manner by which it performed classification inspections—was still not enough to establish federal officer jurisdiction. *Id.* The court remanded the case because ABS offered no specific evidence showing that the actions that led to the injuries were performed "pursuant to a federal officer's directions. . . ." *Id.* at *2. ABS's own inspection report showed that the inspection at issue was done at Bouchard's request and under ABS's own rules, guides, standards, and other criteria. *Id.* ABS—like Defendants here—offered no specific evidence showing that the activities that were the subject of the suit were performed "pursuant to a federal officer's directions." *Id.*

Accordingly, just like in *Jackson*, here Defendants cannot—and frankly have not—provided any evidence that Plaintiffs' injuries arose out of activities that were the subject of federal officer control. In fact, none of Defendants' actions that are the subject of this suit were conducted at the behest of a federal officer. To be clear, Defendants cannot show a causal link between the failures that led to Plaintiffs' injuries and a specific federal officer's direction.

**2. Defendants' critical infrastructure arguments are irrelevant to the issue of control.**

For similar reasons, Defendants' infrastructure arguments fail to establish federal jurisdiction. In fact, Defendants fail to explain why the designation of the Tyson facility as a "critical infrastructure" relates to Plaintiffs' claims at all. This alone is fatal to Defendants' arguments.

Nothing in the documents Defendants cite (including the Masters declaration or the additional evidence) indicates that Defendants were specifically directed by the Federal

Government to do anything that relates to Plaintiffs' injuries. Instead, the evidence Defendants put forth simply indicates that they communicated with federal regulators and that Tyson Foods was subject to federal regulation. But as demonstrated in *Jackson* and other cases, even a "highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone." *Watson v. Philip Morris, Inc.*, 551 U.S. 142, 153 (2007). "And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.*

As a final point, it is worth noting that Defendants' reliance on *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976) does little to move the needle towards federal control. Defendants claim that *E. Air Lines* allows for "informal" control making earlier assertions by President Trump regarding the DPA relevant to the control analysis. But *E. Air Lines*, a breach of contract case, has nothing to do with the "acting under" portion of federal officer removal and certainly does not elevate Defendants' pre-Executive Order evidence or the President's statements to a level establishing federal officer control in this state personal injury case.

In short, neither Defendants' response nor the evidence they cite is enough to establish the requisite federal control necessary to prove federal officer jurisdiction.

3. **Defendants did not provide a colorable federal defense.**

As they did in their removal papers, Defendants also fail in their opposition to Plaintiffs' motion to establish a colorable federal defense. In fact, Defendants essentially repeat the same meritless arguments claiming that the PPIA, the April 28 Executive Order, and the DPA qualify as colorable federal defenses on the facts here. Defendants are wrong.

As Plaintiffs explained in their motion, the purpose of the PPIA is "to provide for the inspection of poultry and poultry products and otherwise regulate the processing and distribution of such articles . . . to prevent the movement or sale in interstate or foreign commerce of, or the

burdening of such commerce by, poultry products which are adulterated or misbranded." 21 U.S.C. § 452; *see also Meaunrit v. The Pinnacle Food Groups, LLC*, C 09-4555 CW, 2010 WL 1838715, at *5 (N.D. Cal. May 5, 2010) (noting that "Congress enacted the FMIA and the PPIA in part to prevent the interstate transfer of adulterated and misbranded meat and poultry products."). The Act provides for sanitary practices in the poultry packing facilities "for the purpose of preventing the entry or flow or movement in commerce or burdensome effect upon commerce, of poultry products which are adulterated." 21 U.S.C. § 456. The PPIA contains an express preemption clause that preempts state law that is contrary to the purposes of the PPIA: to "provide for the inspection of poultry and poultry products and otherwise regulate the processing and distribution" of poultry. 21 U.S.C. § 452.

Importantly, Defendants do not cite a single case where a state personal injury claim filed in state court was successfully removed based on the PPIA preemption clause. But they ignore the mountain of cases litigated in state court against Tyson Foods for personal injury claims similar to those Plaintiffs bring here. Clearly, Plaintiffs' claims do not arise out of the PPIA or implicate the PPIA, and thus are not preempted by the PPIA.

And neither the April 28 Executive Order nor the DPA provides colorable federal defenses. As outlined above, President Trump issued his order under the DPA weeks after Plaintiffs were exposed to and contracted COVID-19. Defendants cannot simply assert a colorable federal defense based on the Executive Order or the DPA because both are wholly irrelevant to Plaintiffs' claims, and their claims simply do not arise out of any executive or federal instructions or direction.

### 4.  There is no federal question on the face of Plaintiffs' state court petition.

Having failed to establish their federal officer claims, Defendants wholly fail in their federal question arguments. Specifically, Defendants have failed to establish that a federal issue

8

is a "necessary element" of Plaintiffs' state law claims. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Under Defendants' interpretation, most state law tort claims against federally regulated private entities would be removable. No case—including *Grable*—sweeps so broadly. In short, Plaintiffs' claims do not turn on interpretation of federal law, do not implicate federal regulations that govern the meat industry, and do not arise out of a federal cause of action. Absent any federal question on the face of Plaintiffs' state petition, and any indication in the slightest that Plaintiffs' claims fall under federal law, remand is appropriate.

## CONCLUSION AND PRAYER FOR RELIEF

Defendants have not carried their burden to establish federal jurisdiction under any of their theories on removal. First, Defendants have failed to show federal officer jurisdiction because Defendants have not put forth any evidence that it was operating under the direction of a federal officer or that the actions of which Plaintiffs complain in their petition have a causal nexus to a federal officer's control. Thus, removal under the federal officer statute was incorrect. And second, Defendants have further failed to establish federal jurisdiction under the federal question doctrine. Plaintiffs' well-pleaded state petition raises exclusively state law tort claims. Accordingly, there is no federal question on the face of Plaintiffs' petition, nor is there any indication that Plaintiffs' claims arise out of federal law. As a result, the Court should remand this case to the County Court at Law of Panola County, Texas.

Respectfully Submitted,

ARNOLD & ITKIN LLP

*/s/ Kurt Arnold*
_____

Kurt Arnold
State Bar No: 24036150
Federal ID: 36185
karnold@arnolditkin.com
Caj Boatright
State Bar No: 24036237
Federal ID: 650384
cboatright@arnolditkin.com
Roland Christensen
State Bar No: 24101222
Federal ID: 2987857
rchristensen@arnolditkin.com
Joseph McGowin
State Bar No: 24117268
Federal ID: 3465102
jmcgowin@arnolditkin.com
Claire Traver
State Bar No: 24115871
ctraver@arnoldiktin.com
6009 Memorial Drive
Houston, TX  77007
Tel: 713.222.3800
Fax: 713.222.3850
e-service@arnolditkin.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system, which will send notification of electronic filing to all counsel of record on October 16, 2020.

*/s/ Roland Christensen*

Roland Christensen