IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| ROLANDETTE GLENN ET AL. | § | CASE NO. 9:20-CV-184 |
| | § | |
| v. | § | JUDGE MICHAEL TRUNCALE |
| | § | |
| TYSON FOODS, INC. ET AL. | § | |
| | § | |

## <u>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND</u>

Pending before the Court is Plaintiffs' Motion to Remand. (Doc. #13). Plaintiffs seek to have this case remanded to state court, alleging that the defendants, Tyson Foods, Inc. ("Tyson"), Jason Orsak, Erica Anthony, and Maria Cruz, have not carried their burden to establish federal officer or federal question jurisdiction. After considering the motion, arguments from the parties, and the applicable law, the Court grants Plaintiffs' Motion to Remand. (Doc. #13).

## I.    BACKGROUND

Plaintiffs are eleven past and present workers of Defendant Tyson who allege that they contracted COVID-19 while working at a Tyson poultry-processing facility and a personal representative of a twelfth worker who allegedly died as a result of contracting the virus at work. (Doc. #3, at 3–4). More specifically, Plaintiffs allege that despite a stay-at-home order issued by Governor Abbott that went into effect on April 2, 2020, Plaintiffs were required to continue working at the Tyson meatpacking plant in Center, Texas ("Center Facility"). *Id.* at 5. They assert that both before and after the April 2 stay-at-home order, Tyson failed to take adequate precautions to protect the workers at its meatpacking facilities from COVID-19. *Id.*

At all relevant times during the events alleged the first amended petition, Defendant Jason Orsak was a complex safety manager for Tyson and Defendants Erica Anthony and Maria Cruz

1

were safety coordinators for Tyson. *Id.* at 4. Plaintiffs allege those defendants were directly responsible for implementing and enforcing adequate safety measures to prevent the spread of COVID-19 but failed to do so. *Id.* at 5–6. More specifically, Plaintiffs allege that Orsak and Anthony failed to issue masks to employees, institute six feet barriers between employees, limit contact between employees, and create rideshare alternatives to the Center Facility's bus system. *Id.* at 6. Allegedly, as a direct result of the negligence and gross negligence of Defendants, Plaintiffs contracted COVID-19 at the Center Facility and have experienced significant injuries, including death. *Id.*

On July 23, 2020, Plaintiffs filed their first amended petition in the 273rd Judicial District of Shelby County, Texas. The petition asserts a negligence and gross negligence claim against all Defendants, a premises liability claim against Tyson, and a wrongful death and survival claim against all Defendants by Plaintiff Clifford Bell, individually and as the personal representative for the estate of Beverly Whitsey. *Id.* at 6–9.

Tyson then removed the action to federal court asserting federal officer and federal question jurisdiction. (Doc. #1). It asserts that because Tyson was under an April 28, 2020, Executive Order to continue operations pursuant to the supervision of the federal government and pursuant to federal guidelines and directives, federal court is the proper forum for resolving the case. *Id.* at 3. Plaintiffs then filed the pending motion to remand alleging that Defendants had not met their burden to prove federal jurisdiction is proper. (Doc. #13).[1]

## II.    LEGAL STANDARD

Federal courts are courts of limited jurisdiction and may only hear a case when jurisdiction is both authorized by the United States Constitution and confirmed by statute. *Griffin v. Lee*, 621

---

[1] Although there are both corporate and individual defendants, all are represented by the same attorneys. For clarity purposes, the Court will refer to all defendants as Tyson.

F.3d 380, 388 (5th Cir. 2010). Removal to federal court is proper when the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). The federal court has original federal question subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Additionally, under Section 1442(a)(1), commonly referred to as the Federal Officer Removal Statute, "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof" may remove a civil action commenced in state court "for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." 28 U.S.C. § 1442(a)(1).

Although usually "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand," *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002), the federal officer removal statute must be liberally interpreted because of its broad language and unique purpose. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007). As with any motion to remand, the removing party bears the burden of showing that federal jurisdiction exists, and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998).

### III.   DISCUSSION

To this Court's knowledge, there are currently three main judicial opinions that address virtually the same issue as the one in this case: *Fernandez v. Tyson Foods, Inc. et al.*, No. 20-CV-2079-LRR, 2020 WL 7867551 (N.D. Iowa Dec. 28, 2020),[2] *Fields et al. v. Brown et al.*, No. 6:20-

---

[2] This decision is currently on appeal before the Eighth Circuit. *Fernandez v. Tyson Foods, Inc. et al.*, No. 21-1010 (8th Cir. appeal docketed Jan. 4, 2021).

CV-00475, 2021 WL 510620 (E.D. Tex. Feb. 11, 2021),[3] and *Wazelle, et al., v. Tyson Foods, Inc., et al.*, No. 2:20-CV-203-Z, 2021 WL 2637335 (N.D. Tex. June 25, 2021). *Fernandez* granted remand while *Fields* and *Wazelle* did not. For the reasons explained below, this Court agrees with *Fernandez* and Plaintiffs' motion to remand will be granted.

### A.    Federal Officer Jurisdiction

A defendant removing under section 1442(a)(1) must show "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). Here, Tyson's status as a "person" is not disputed. However, elements one, three, and four are disputed.

### (1) Colorable Federal Defense

To be "colorable," the asserted federal defense need not be "clearly sustainable," as section 1442 does not require a federal official or person acting under him "to 'win his case before he can have it removed.'" *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999) (internal citations omitted). Instead, if an asserted federal defense is plausible, it is colorable. *Latiolais*, 951 F.3d at 297. A defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Id*.

In its notice of removal, Tyson raised two federal defenses. First, it argues that the Poultry Products Inspection Act ("PPIA") expressly preempts Plaintiffs' state-law claims. (Doc. #1, at 9). Second, it claims that "Plaintiffs' claims are also preempted by the DPA ["Defense Production

---

[3] The district court in *Fields* gave the plaintiffs permission to apply for an interlocutory appeal of the order, but the Fifth Circuit denied the application without stating a reason. *Fields v. Brown*, No. 21-90021 (5th Cir. June 21, 2021).

Act"] and the President's [April 28, 2020] Food Supply Chain Resources executive order and related federal directions." *Id.* at 10.

   i. PPIA

  After pointing out that the PPIA and the Federal Meat Inspection Act ("FMIA") have substantially identical preemption provisions, Tyson maintains that the FMIA "'sweeps widely' and 'prevents a State from imposing any additional or different—even if non-conflicting— requirements that fall within the scope of the Act and concern a slaughterhouse's facilities or operations." (Doc. #1, at 9–10) (quoting *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 459–60 (2012)). Specifically, Tyson argues that "the alleged failings Plaintiff pleads are 'in addition to, or different than,' the requirements that FSIS[4] [("Food Safety and Inspection Service")] has imposed regarding employee hygiene and infectious disease—and therefore are preempted under the express terms of 21 U.S.C. § 467e." (Doc. #14, at 22). Tyson asserts that "[p]reemption applies wherever Plaintiffs seek to impose, as a matter of state law, different requirements for poultry-processing employees than those adopted by the Department of Agriculture." (Doc. #14, at 23).

  The PPIA's express preemption clause (which includes a savings clause) is found at 21 U.S.C. § 467e and provides:

> Requirements within the scope of [the PPIA] with respect to premises, facilities and operations of any [meat-processing] establishment . . . which are in addition to, or different than those made under [the PPIA] may not be imposed by any State . . . .
>
> This chapter shall not preclude any State . . . from making requirement [sic] or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter.

Thus, for a state rule to be preempted by the PPIA, it must be within the scope of the Act. "[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent.

---

[4] The United States Department of Agriculture ("USDA") is responsible for enforcing the PPIA. FSIS is under the direction of USDA. The parties' briefing use FSIS and USDA somewhat interchangeably.

The purpose of Congress is the ultimate touchstone." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208 (1985) (internal citations omitted). "To discern Congress' intent we examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990).

Tyson's preemption argument is premised on a misunderstanding of the PPIA's breadth. The purpose of the PPIA is "to provide for the inspection of poultry and poultry products and otherwise regulate the processing and distribution of such articles . . . to prevent the movement or sale in interstate or foreign commerce of, or the burdening of such commerce by, poultry products which are adulterated or misbranded." 21 U.S.C. § 452. According to Tyson, USDA (through FSIS) has promulgated hundreds of pages of federal regulations addressing infectious diseases. However, Tyson (and the *Fields* and *Wazelle* courts) do not address the fact that the PPIA's primary purpose is to protect consumers from unsafe meat, not to protect workers from disease. In fact, FSIS itself acknowledges that it "has neither the authority nor the expertise to regulate issues related to establishment worker safety." Modernization of Swine Slaughter Inspection, 84 Fed. Reg. 52,300, 52,305 (Oct. 1, 2019). Instead, "OSHA [Occupational Safety and Health Administration] is the Federal agency with statutory and regulatory authority to promote workplace safety and health." *Id.* Because FSIS, the agency that enforces the PPIA, does not have authority to regulate worker safety, it follows that no state common law negligence claims based on improper workplace safety could be within the scope of the PPIA. And there is no suggestion from Tyson that the provisions OSHA administers could preempt Plaintiffs' claims.

Further, Tyson points to no evidence that Congress intended the PPIA to displace state-law actions relating to workplace safety. On the contrary, the federal agency that does regulate workplace safety, OSHA, expressly preserves a role for state-law regulation and common law

claims, including those that relate to "injuries, diseases, or death of employees arising out of, or in the course of, employment." 29 U.S.C. § 653(b)(4). Federal law gives the states express authority to develop their own health and safety standards and recognizes that the states play the primary role in protecting their workers' health and safety. *See* 29 U.S.C. § 667. And in fact, many cities and states have implemented their own COVID-19 procedures, and nothing suggests that those procedures do not apply to facilities regulated by the PPIA.

According to Tyson, FSIS has promulgated hundreds of pages of federal regulations addressing infectious diseases. But the regulatory examples Tyson cites confirm that the PPIA's concern is with food safety, not worker safety. Tyson notes that "FSIS has promulgated a specific '[d]isease control' regulation providing that '[a]ny person who has or appears to have an infectious disease . . . must be excluded from any operations which could result in product adulteration and the creation of insanitary conditions.'" (Doc. #14, at 21) (alterations in original) (quoting 9 C.F.R. § 416.5(c)). This provision highlights the PPIA's specific concern with conditions leading to "product adulteration," not the spread of disease among workers. Likewise, in noting that regulations promulgated under the PPIA require worker protective equipment, Tyson omits the other portion of § 416.5(b) which states that "garments must be changed during the day as often as necessary to prevent *adulteration of product* and the *creation of insanitary conditions*. 9 C.F.R. § 416.5(b) (emphasis added). This again demonstrates the PPIA's concern with the "adulteration of product." Because the PPIA does not govern worker safety, it does not preempt Plaintiffs' claims that Tyson negligently failed to protect workers.

The PPIA only preempts requirements within its scope—and for a duty to fall within that scope, there must be some evidence that Congress intended to preempt that duty. But Tyson has failed to point to a single provision of the PPIA that indicates any intent to preempt the common-

law duty at issue here—the duty to maintain a reasonably safe workplace. And if the PPIA does not address a duty whatsoever, than the duty is not within its scope and therefore is not preempted. Taking Tyson's argument to its logical conclusion would mean that states could not implement workplace safety regulations in any facility subject to PPIA's regulations, which is illogical and would unduly interfere with the states' police power to protect the health and safety of their citizens. Because nothing in the statutory language or in the structure and purpose of the PPIA suggest an intent for the PPIA to preempt state common-law workplace safety claims such as this one, the PPIA does not provide a colorable federal defense.

ii.   DPA and the President's Executive Order

Tyson's second defense is that Plaintiffs' claims are also preempted by the DPA and the President's April 28, 2020 Food Supply Chain Resources Executive Order and related federal directions. (Doc. #1, at 10). This argument fails. As Plaintiffs point out in the motion to remand, their claims arose before the President issued his April 28 order invoking the DPA. In their petition, Plaintiffs allege that Tyson unnecessarily and recklessly exposed Plaintiffs to COVID-19 weeks before the April 28 order. Specifically, Plaintiffs state that Tyson "failed to take adequate precautions to protect the workers at its meatpacking facilities, including the Center, Texas meatpacking facility" by failing to take "significant precautions to prevent the spread of COVID-19, prior to April 2, 2020." (Doc. #3, at 6). Clearly an executive order issued after Plaintiffs contracted COVID-19 cannot preempt their claims.

Tyson raises no argument in their response to the motion to remand to refute this. Instead, Tyson merely asserts that it need not prove it will prevail on their asserted defense. However, it is Tyson's burden to show it has a colorable federal defense and although it need not prove it will prevail on the defense, it at least has to show that it is entitled to raise it. Tyson has made no such

showing under either the PPIA or the DPA. Further, it appears that Tyson's reliance on the PPIA and the DPA is made for the sole purpose of obtaining jurisdiction. *See Latiolais*, 951 F.3d at 297 ("[A]n asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous"). Thus, Tyson has no colorable federal defense, and federal officer removal is improper.

### (2) Acted Pursuant to a Federal Officer's Directions

As the Supreme Court has emphasized, the "acting under" requirement in 28 U.S.C. § 1442(a)(1) is broad and should be liberally construed. *Watson*, 551 U.S. at 147 (2007). The phrase contemplates a relationship between a private person and a federal officer that "typically involves subjection, guidance, or control" by the federal officer and, on the part of the private person, "an effort to assist, or help carry out, the duties or tasks of the federal superior." *Id.* at 151. In other words, the relationship involves a "delegation" of authority. *Id.* at 156–57. To invoke the protection of a federal forum under 28 U.S.C. § 1442(a)(1), the private person's relationship with a federal officer must implicate a "federal interest." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998).

Tyson points to two possible sources of direction from a federal officer: Tyson's designation as "critical infrastructure" and the President's April 28, 2020 Executive Order. As explained above, the primary allegations in Plaintiffs' petition took place before April 28, 2020. At the time the events in the petition took place, there was no executive order in place. Thus, the executive order cannot satisfy the acting under prong of § 1442.

Tyson also argues it was acting under a federal officer's directions because it "operated its facilities—including the Center facility—as critical infrastructure of the United States pursuant to 'critical infrastructure' emergency plans growing out of Presidential Policy Directive 21 of the

9

Obama Administration, which were followed upon declaration of a national emergency." (Doc. #14, at 16). As a preliminary matter, Tyson fails to point out that the food and agriculture sector has been designated as critical infrastructure since 2003; it is not something that arose because of the pandemic. *See Food and Agriculture Sector-Specific Plan*, FDA, vi, https://www.cisa.gov/sites/default/files/publications/nipp-ssp-food-ag-2015-508.pdf (2015).

Even though the President declared a national emergency on March 13, 2020, and issued "Coronavirus Guidelines" on March 16, 2020, the Court is unpersuaded that such declarations constitute direction under a federal officer for purposes of removal. Although Tyson claims that it was "in constant contact with federal officials at the Department of Homeland Security [("DHS")] and the USDA regarding continued operations," the evidence it attached to its response to the motion to remand does not support that assertion. (Doc. #14, at 16). The evidence Tyson uses is a declaration of an employee, two emails that establish Tyson and DHS/FSIS had each other's contact information, an essential employee verification form Tyson itself created, general guidance on the critical infrastructure workforce, general guidance from USDA, emails of Tyson trying to obtain PPE from USDA, and a USDA sheet describing COVID-19 funding for FSIS employees. Tyson has produced no evidence that any federal official directed it to do something. Many of the documents Tyson cites to are titled "guidance" which are of course not mandatory or binding.

While Tyson may have been in regular contact with USDA regarding continued operations of its facilities at the early stages of the COVID-19 pandemic, such contact under the vague rubric of "critical infrastructure" does not constitute "subjection, guidance, or control" involving "an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 151–52. Although Tyson, and the courts in *Wazelle* and *Fields*, all give great weight to the fact that USDA and FSIS closely monitored the plant and provided employees onsite during the

pandemic, all three fail to note that Tyson, as an entity subject to federal regulation, is always closely monitored by FSIS and subject to its guidance and that FSIS always has employees onsite at the plant and were not there as a direct result of COVID-19. USDA statements about protocols for how FSIS inspectors would perform their regulatory functions during the pandemic do not show government control of Tyson's own operations. Tyson did not work with USDA and FSIS, nor did it receive any concrete, binding directives from them; Tyson merely received guidance from them. And close monitoring does not entitle it to federal officer removal. *See id.* at 153. Many industries are closely monitored by the federal government, but the vast majority of them cannot claim federal officer removal. *See id.* ("A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries). Tyson has not shown that its contact with USDA after the president declared a national emergency was different than its normal communication with USDA or that it constituted a delegation of authority.

The Court finds the Supreme Court's decision in *Watson* particularly helpful. In *Watson*, the defendant alleged that the Federal Trade Commission ("FTC") had delegated to the tobacco industry authority to test the tar and nicotine content of cigarettes, and that the defendant was thus acting under the FTC in performing that testing function. 551 U.S. at 154. The testing at issue had at one point been performed by the FTC itself, and the agency published the test results periodically and sent them annually to Congress. *Id.* at 155. When the FTC eventually stopped performing such tests due to cost considerations, the industry assumed that responsibility, "running the tests

according to FTC specifications and permitting the FTC to monitor the process closely." *Id.* "The FTC continue[d] to publish the testing results and to send them to Congress," just as it had done with the FTC's own test results. *Id.* Despite the close coordination alleged in that case, the Supreme Court unanimously held that the defendant was not "acting under" the FTC within the meaning of Section 1442(a)(1). Tyson attempts to distinguish this case from *Watson* by stating that the Supreme Court's decision was based on a finding that the defendant was simply complying with the law. However, the holding is more complex. The Court stressed that there was "no evidence of any delegation of legal authority from the FTC to the industry association to undertake testing on the Government agency's behalf. Nor [wa]s there evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement." *Id.* at 156. Like Tyson in this case, the defendant in *Watson* pointed to numerous documents and communications in support of its claim that it was working with the FTC and acting under its direction in a relevant sense. But the Supreme Court "examined all of the documents" and found them lacking because none "establish[ed]the type of formal delegation that might authorize the defendant to remove the case." *Id.*

Although Tyson asserts that it was carrying out the duties and task of the federal superior, like in *Watson*, here there is no evidence of any delegation of legal authority from USDA to Tyson. *See id*. Nor is there evidence of any contract, any payment, any employer/employee relationship, or any principal/agent arrangement. *See id.* And although there may have been considerable regulatory detail and supervision, this Court can find nothing that warrants treating the USDA/Tyson relationship as distinct from the usual regulator/regulated relationship. While the Court agrees with the proposition from *E. Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 994 (5th Cir. 1976), that the DPA can be exercised through informal methods, that case did

not deal with federal officer removal. Tyson cites no case where a private entity without a contract with the federal government was able to satisfy the acting under requirement.[5] *But cf. Winters*, 149 F.3d at 398 (defendant with a detailed and specific contract with the defense department to produce a product with the specifications specifically dictated by the government satisfied acting under requirement)*; St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Serv. & Indem. Co.*, 935 F.3d 352, 356 (5th Cir. 2019) (because under the Federal Employees Health Benefits Act, the Office of Personnel Management was responsible for contracting with private insurance carriers to provide health benefits plans to federal employees, insurance carrier with such a contract satisfied the acting under requirement). Thus, the "acting under" requirement is not met.

### (3) Connected or Associated with an Act Pursuant to a Federal Officer's Directions

Finally, Tyson must show a connection or association between the federal officer's directions and Plaintiffs' claims. *Latiolais*, 951 F.3d at 296.

The parties dispute the applicable standard for this prong. Plaintiffs, citing the Fifth Circuit's decision in *Winters*, argue that there must be a "causal nexus" between plaintiffs' claims and the directions that defendants received from a federal officer. 149 F.3d at 387. But that standard no longer governs. In 2020, the Fifth Circuit, sitting en banc, reinterpreted the 2011 statutory amendments to § 1442 in *Latiolais v. Huntington Ingalls. Inc.* 951 F.3d 286. Those amendments "alter[ed] the requirement that a removable case be 'for' any act under color of federal office and permitt[ed] removability of a case 'for or relating to' such acts." *Id.* at 291. That addition, the *Latiolais* court held, "broadened federal officer removal to actions, not just causally

---

[5] Tyson cites to *Maryland v. Soper (No. 1)*, a case involving federal agents directing a private person to drive a car in pursuit of bootleggers. *Maryland v. Soper (No. 1)*, 270 U.S. 9 (1926). While the Court there noted that the chauffeur and helper had the same right to the benefit of the removal provision as the federal agent, it ultimately rejected the removal efforts and thus, this comment is dicta. *Soper* also dealt with § 1442's predecessor statute, not § 1442 itself.

connected, but alternatively connected or associated, with acts under color of federal office." *Id.* at 292.

Historically, many courts considered the acting under and causation requirements together. *See, e.g. Winters*, 149 F.3d 387. Although it has now been established that they are distinct and should be considered separately, that is not possible when, as here, the court finds the defendant has not acted pursuant to a federal officer's directions. In other words, there can be no connection or association between the federal officer's directions and the plaintiffs' claims when, as here, the court has determined that there were no federal officer's directions. Thus, because the "acting under" requirement is not met, the connection or association element is also not met.

### B.      Federal Question Jurisdiction

Pursuant to 28 U.S.C. § 1331, federal courts have subject matter jurisdiction over civil actions "arising under" federal law. 28 U.S.C. § 1331. A federal question exists "only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 27–28 (1983). "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Upon review of the petition, the Court finds that the petition does not assert federal claims, but rather asserts common law tort claims for negligence, premises liability, and wrongful death. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (providing that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded

complaint"). Additionally, Plaintiffs' claims do not allege a cause of action created by a federal statute. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (providing that cases brought under federal question jurisdiction are generally cases where federal law creates the cause of action).

As to Tyson's reliance on interpretation of the DPA, the Court has already explained that its reliance on President's April 28, 2020 Executive Order invoking the DPA is misplaced because it was issued after the primary allegations in the petition had taken place. Further, Plaintiffs' generic passing references in the petition to federal regulations and guidance and their brief mention of CDC guidelines and OSHA standards do not confer federal question jurisdiction. *See Merrell Dow*, 478 U.S. at 813 (providing that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"); *Grable & Sons Metal Prod., Inc.*, 545 U.S. at 314 (providing that for federal courts to have jurisdiction, the state law claim must turn on an "actually disputed and substantial" issue of federal law). Accordingly, the Court concludes that the petition does not contain a federal question and, therefore, the Court lacks subject matter jurisdiction over the case.

## IV.    CONCLUSION

The Court finds that Tyson has failed to demonstrate (1) that it has a colorable federal defense; (2) that it acted under the direction of a federal officer; and (3) that because it does not meet the "acting under" element it cannot meet the connection or association element. Accordingly, Tyson's removal based on the federal officer removal statute is improper. The Court also finds that the petition does not contain a federal question. Therefore, the Court lacks subject matter jurisdiction over this case.

It is accordingly **ORDERED** that Plaintiffs' Motion to Remand (Doc. #13) is **GRANTED**. The Clerk is directed to **CLOSE** this case and **REMAND** it to the 273rd Judicial District Court of Shelby County, Texas, from which it was removed in accordance with the procedures set forth by the Local Rules for the Eastern District of Texas. All remaining deadlines and trial settings are **TERMINATED**, and all pending motions are denied as **MOOT**, without prejudice to reassert as necessary in state court.

**SIGNED this 12th day of August, 2021.**

Michael J. Truncale
United States District Judge

16